Sam Meziani (9821)
GOEBEL ANDERSON PC
405 South Main Street, Suite 200
Salt Lake City, Utah 84111
Telephone: 801-441-9393
smeziani@gapclaw.com

*Attorney for Defendant Clinton Chukwudi Uchendu*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>PRINCESS EZIYI and CLINTON CHUKWUDI UCHENDU,<br><br>        Defendants. | **MEMORANDUM IN OPPPOSITION TO MOTION TO STRIKE EXPERT TESTIMONY OF UZOMA EZE**<br><br><br>Case No.: 2:22-CR-00160<br><br>Judge Jill N. Parrish |

Clinton Uchendu, through counsel, opposes the Government's motion to exclude the testimony of Uzoma Eze:

## ARGUMENT

### I.        Uzoma Eze is Qualified to Provide Expert Testimony

Uzoma Eze is qualified to render an opinion under Rule 702.[1]   Rule 702 expressly recognizes five bases for qualifying an expert, and it "is clear that a background in just one of

---

[1] *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009)

these five may be sufficient."[2]  Thus, even a witness with no formal education in a subject may be qualified as a witness based on experience.[3]  "'Experience' may qualify a witness as an expert so long as it is obtained in a practical context."[4]

In this case, Uzoma Eze is qualified to render expert opinions based on his knowledge and experience developed as a Nigerian American, businessman, and lawyer.

Uzoma Eze is a Nigerian American, businessman, and lawyer.  Mr. Eze has significant experience and expertise in financial transactions involving the United States and Africa.  He is the founder of an application to send money to Nigeria called Aidemoney.  Based on his business experience, he has experience with the economic practices of members of the Nigerian diaspora in sending money to Nigeria.  His report explains that Nigerians in the United States send $24 billion to Nigeria on an annual basis.  As the founder and owner of a company involved in this market, Mr. Eze is qualified to testify about the practices of sending money to Africa.  Mr. Eze's business experience alone qualifies him as an expert.  The Government's motion, however, fails to even acknowledge Mr. Eze's business experience or the fact he founded a company to send money to Africa.

In addition to his business experience, Mr. Eze as a Nigerian and as a lawyer has personal knowledge and experience of the plague of scams present in the Nigerian diaspora.  Mr. Eze has direct experience representing Nigerians accused of knowingly sending money.  Through these representations, he is familiar with the methods, tactics and practices of Nigerian scam artists and money launderers.  Indeed, he has knowledge of the very methods, tactics, and practices alleged in the indictment.  Just as a law enforcement officer can be qualified to talk about criminal

---

[2] Federal Practice and Procedure (Wright and Miller) § 6264.1
[3] *Id.* (A witness with experience but no formal education may be qualified as an expert)
[4] *Id.*

methods and practices based on the officer's experience in drug investigations, Mr. Eze may obtain knowledge and experience through his involvement as a Nigerian and as a lawyer in Nigerian fraud cases.

In sum, Mr. Eze is qualified by knowledge and experience to render the opinions.

## II.   **The Opinions are Helpful and Admissible**

At this stage, the proponent of the testimony "need not prove that the expert is undisputedly correct."[5] Instead the party must show the expert used reliable methods.[6]  Mr. Uzoma's opinions are reliable and relevant, in that they will assist the trier of fact.[7]

### Opinion No. 1

The Government's primary cooperating witnesses and Mr. Uchendu are all Nigerians living in America.  It will be helpful to the finder of fact to understand the financial practices of members of the Nigerian diaspora are different than those Americans without a similar connection to a foreign country.  It will be helpful for the jury to understand the unique facts concerning the Nigerian central bank and currency, the ability of Nigerians and Americans to send dollars, and the practices that have evolved into everyday practices in the Nigerian diaspora.  It will be helpful for the jury to understand that Nigerians living in America send $42 billion to Nigeria on an annual basis, and it will be helpful for the jury to understand the details and practices of how this money is sent on an informal basis in the parallel market.  If the fact finder does not understand the underlying economics and practices of Nigerians in sending money, the fact finder's understanding of the subject transactions will be impoverished.  Therefore, the court should find that the opinions are helpful to the fact finder.

---

[5] *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1217-18.
[6] *Id.*
[7] *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013)

**Opinion No. 2**

Mr. Uzoma will testify that based on his experience, one of the tactics of Nigerian scam participants is to insert the funds in legitimate transactions within the parallel market.  Mr. Eze's experience in international financial transactions, including founding a money transmitting company that must comply with federal and state regulations, ensures he has adequate experience to render the opinion.  The opinion is not simply a conclusion but helps the jury understand the tactics and methods of Nigerian scam artists.  Just as federal law enforcement agents can testify as to the methods and tactics of drug traffickers, Mr. Eze can testify as to the methods and tactics of Nigerians participating in scams and targeting innocent transactions.

The Government's conclusory argument, (lacking any citation to authority), rings hollow when the Government itself uses experts to testify about money laundering operations.  In *U.S. v. Gan*, for example, the "government presented evidence to support the conspiracy charge during direct examination of a Department of Homeland Security agent who testified on money laundering organizations."[8]  In *U.S. v. Cordoba*, the Government filed an expert disclosure "in which it identified Deborah Morrissey as an expert in the area of money laundering."[9]  The court should not credit the Government's complaints here when the Government regularly uses experts to testify about money laundering methods.

**Opinion No. 3**

Similar to argument No. 2, Mr. Eze may lend his substantial experience to the means and methods of Nigerian scam operators.  Mr. Eze can certainly have knowledge of the fact that

---

[8] 54 F. 4th 467, 473-74 (7th Cir. 2022)
[9] 2012 WL 3620306, *

Nigerian scam operators do not normally choose to use their own names on bank accounts but instead try to deceive and manipulate others into using their own names to legitimize the transactions.  This is no different from a Government money laundering expert testifying about methods of money laundering organizations.  Just as law enforcement officers may properly testify as to means and methods of drug trafficking and money laundering organizations, Mr. Eze may bring his unique experience to bear to help the jury understand the methods and tactics of Nigerian scams.

**Opinion No. 4**

The Government misapprehends this opinion and its legitimate basis under the Federal Rules of Evidence.  The Government objects to Mr. Eze's opinion that the facts and circumstances of this case are consistent with Uchendu acting as an innocent money mule, complaining it is inappropriate to offer an opinion on mental state.  But the Government has not cited the correct evidence rule, which allows the testimony even though it bears on the ultimate issue, and even though it is related to mental state.  Federal Rule of Evidence 704 allows a very wide berth for expert testimony, so long as the expert does not cross the line of opining that Uchendu did or did not have a certain mental state.

Federal Rule of Evidence 704(a) provides an opinion is "not objectionable just because it embraces an ultimate issue."  The scope of Rule 704(b) is limited.  "Rule 704(b) only prevents experts from expressly stating the final conclusion or inference as to a defendant's actual mental state.  The rule does not prevent the expert from testifying as to facts or opinions from which the jury could infer the defendant had the requisite mental state."[10]  "It is only the last step in the

---

[10] *U.S. v. Bicknell*, 2013 WL 5274259, *1 (D. Kan. 2013) (citing *U.S. v. Richard*, 969 F.2d 849, 845-855 (10th Cir. 1992)

inferential process— a conclusion as the defendant's actual mental state—that Rule 704(b) commands the expert to be silent."[11]  Counsel is aware of the rule and will abide by it.  Counsel will not ask any questions of Mr. Eze that cross the line and would require an answer concerning Uchendu's actual mental state.

Mr. Eze, however, has not opined on whether Uchendu did or did not have a certain mental state.  Mr. Eze's opinions are different.  Mr. Eze opines that the facts and circumstances of this case are *consistent with* others taking advantage of Mr. Uchendu so that Uchendu is acting as an innocent money mule.  His opinion is entirely appropriate given the unique facts of this case and the developed law under Rule 704 allows this opinion.

As set forth above, the limited scope of Rule 704(b) bars only those opinions directly addressing mental state.  For years, federal courts throughout the country have allowed experts to testify that certain facts are circumstances are "*consistent with*" a defendant's mental state.  For example, it is a basic tool in the drug prosecution toolbox that law enforcement experts may opine that certain facts and circumstances are "consistent with" the distribution of drugs rather than personal use.[12]  Recent Tenth Circuit authority holds Rule 704(b) "does not prevent an expert from

---

[11] *U.S. v. Draine*, 26 F. 4th 1178, 1191 (10th Cir. 2022)

[12] *Id.*, citing 4 Weinstein & Burger, Weinstein's Federal Evidence § 704.06[2][d], at 704-28. See also *U.S. v. Deninno*, 29 F.3d 572, 577 (10th Cir. 1994) (finding evidence of intent to distribute based on expert testimony that the amount "was **consistent with** amounts that are distributed"); *U.S. v. Mundy*, 97 Fed. Appx. 844, 846 (10th Cir. 2004) (same); U.S. v. Thomas, 2018 WL 6519556, *3 (D. N.M.) (allowing officers to testify "on whether a quantity of drugs and the packaging of drugs is **consistent with** personal use or distribution"); *U.S. v. Goodman*, 633 F.3d 963, 970 (10th Cir. 2011) (allowing prosecution to ask prosecution expert "whether the hypothetical robber's actions were *consistent with* the behavior of someone with PTSD"); *United States v. Blake*, 284 F. App'x 530, 540 (10th Cir. 2008) (court has applied Rule 702 to allow law enforcement agents to provide expert testimony concerning drug trafficking); *United States v. Wilson*, 276 F. App'x 859, 861 (10th Cir. 2008), citing *United States v. Quintana*, 70 F.3d 1167, 1170-71 (10th Cir. 1995) (meaning of the drug code and terminology); *United States v. Muldrow*, 19 F.3d 1332, 1338 (10th Cir. 1994) (significance of the quantity of cocaine); *United States v. Sturmoski*, 971 F.2d 452, 459 (10th Cir. 1992) (equipment of the drug trade and

drawing conclusions about intent, so long as the expert does not profess to know a defendant's intent."[13]

Mr. Eze's opinions fall squarely within established precedent under Rule 704.  Mr. Eze uses his knowledge and experience to opine that the Government's cooperating witness and Princess Eziyi's actions are *consistent with* people taking advantage of an unknowing participant in the financial transaction.  The Department of Justice itself has published materials concerning the fact bad actors take advantage of people in various financial transactions, and these people become unknowing money mules.[14]  Mr. Eze's opinion is admissible under the governing precedent allowing an expert to opine a defendant's actions and the facts and circumstances are "consistent with" a given set of circumstances.

## **CONCLUSION**

The court should allow Mr. Eze to testify because his knowledge and experience will help the jury properly decide this case.

DATED:  October 19, 2023

*/s/ Sam Meziani*
Sam Meziani
*Attorney for Clinton Chukwudi Uchendu*

---

methamphetamine labs); *United States v. Harris,* 903 F.2d 770, 775-76 (10th Cir. 1990) (drug records); *United States v. McDonald,* 933 F.2d 1519, 1520-23 (10th Cir. 1991) (detective's testimony about the significance of certain quantities of cocaine, that people buying and selling cocaine often have single-edged razor blades in their possession, that crack cocaine is typically not sold in package).
[13] *Id.*
[14] See Dkt. 126, n. 7.