Sam Meziani (9821)
GOEBEL ANDERSON PC
405 South Main Street, Suite 200
Salt Lake City, Utah  84111
Telephone:  801-441-9393
smeziani@gapclaw.com

*Attorney for Defendant Clinton Chukwudi Uchendu*

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>PRINCESS EZIYI and CLINTON CHUKWUDI UCHENDU,<br><br>  Defendants. | **SUPPLEMENTAL MEMORANDUM RE UZOMA EZE**<br><br>Case No.:  2:22-CR-00160<br><br>Judge Jill N. Parrish |

## INTRODUCTION

The Government's supplemental brief beats a strawman.  From the beginning, Uchendu made clear Eze will not testify on mental state.  Uchendu stated Eze will not testify on mental state in his brief filed October 19, 2023[1] as well as at oral argument on December 5, 2023.  Because Eze will not opine on mental state, the court can simply disregard those portions of the Government's presentation that focus on this issue.

---

[1] Dkt. 149, pp. 5-7

Moving to the real issue—whether Eze can opine that the facts of this case are *consistent with* Ken and others taking advantage of Clinton—the Government has made a massive concession, and this concession confirms the door is open to Eze's opinions. The Government concedes Eze is qualified and has reliably opined that scammers target transactions in the parallel market to embed fraud proceeds into transactions between persons attempting to engage in non-fraudulent personal or commercial transactions:

(1) There exists a large parallel market…of dollar-to-naira exchange due to restrictive monetary policy of the Nigerian Central Bank;

(2) In the Nigerian diaspora, even people who have earned funds through legitimate means often use this informal market to transfer those funds;

(3) **It is not uncommon for [scammers] to trick unwitting people into transmitting criminal proceeds**….[2]

As the Government now acknowledges, Eze's experience as a Nigerian-American business owner with years of experience transmitting funds to Nigeria both personally and commercially allows him to testify that scammers seek out existing transactions in which to secret fraud proceeds. Once the Government makes this admission, and given Eze's significant and material experience, it follows that Eze may testify the actions of the bad actors in this case are *consistent with* taking advantage of a transaction in the parallel market ostensibly made for non-fraudulent purposes.

Eze's opinions are well grounded in what will be the trial evidence. The evidence will be that Ken Adigbolo and Princess Eziyi had an existing and expressly illicit relationship. Clinton met Princess while he was a student at Georgia State University in Atlanta. Princess introduced

---

[2] Government Supplemental Brief, Dkt. 185, p. 5.

Clinton to Ken. Ken was directly linked to those scammer(s) in Nigeria who targeted the victim Carol Steinhaus. Instead of receiving the funds directly into his own account which would be traced right back to him and expose him as a scammer, Ken directed the checks be sent to other recipients and then ultimately to Clinton Uchendu, who deposited the checks into his own account opened under his own name and personal information thus taking full responsibility for the funds. Then, once Ken used Clinton to safely deposit the funds in the banking system free of Ken's U.C.C. Article Three fingerprints, Ken directed Clinton to transmit the funds to parties he designated. Thus, Ken used Clinton to make the necessary deposits and outlays so that Clinton, rather than Ken, would be the public point of contact while Ken's involvement would remain hidden from public view.

      Eze has the expertise to opine that under these circumstances, Ken's actions are *consistent with* a scammer taking advantage of what were represented to be non-fraudulent transactions. The jury may ultimately credit or discredit Eze's testimony, and the jury may find that Clinton's actions were consistent with being taken advantage of by scammers, and of course the jury could (erroneously) conclude otherwise. But in all events the Eze testimony does not intrude in any way into the fact-finder's province of deciding whether Clinton possessed an innocent or guilty mental state.

      Instead, Eze's expert testimony is based on significant experience, is reliably applied to this case, and does not intrude into the jury's space to determine mental state and credibility. The court should therefore allow the expert testimony.

## ARGUMENT

### I. Eze May Testify the Actions of Scammers Targeting the Nigerian Community in General are *Consistent With* Scammers Taking Advantage of Clinton Uchendu in This Case

It is well-established in the federal courts that experts may opine on the facts and circumstances of a wide range of transactions without opining on mental state. A good example is drug cases. In drug cases, law enforcement experts routinely testify the facts and circumstances of a given transaction or factual scenario are *consistent with* drug distribution.[3] For example, a quantity of marijuana (x) is consistent with distribution as opposed to personal use. The practice is not limited to drug cases. With respect to the instant fraud and money laundering charges, the Department of Justice regularly presents experts in federal courts to opine on the "methods" of money laundering.[4] A money laundering expert will, for example, testify that certain structural aspects of a transaction are present for the purpose of disguising the source of funds. These cases share an important thing in common: the expert is stating that the *nature or structure of the transaction is consistent with* a given type of transaction— the objective to distribute drugs or to disguise the source of money. But in all events the expert does not touch what is going on in the defendant's head. Uzoma Eze has complied with this established norm and he has done the same thing in this case.

Eze has expertise in international monetary transactions between Nigeria and the U.S. He owns a company that sends money to Africa. He is a Nigerian American with deep ties to his community and the legal issues that affect it. He has a leadership role in his village community

---

[3] See Dkt. 149, p. 6, n. 12
[4] See Dkt. 149, p. 4, nn. 8, 9

group. He advises banks on fraud matters. He was a panelist at a recent conference addressing the parallel market and ways to mitigate fraud in that market. These, and the other areas of expertise set forth in his preliminary and supplemental notices, clearly mark Eze as an expert who is qualified to opine on fraud methods affecting Nigerians. Indeed before he was hired as an expert on this case, Eze published an article on LinkedIn that explained how scammers target non-fraudulent transactions and some of their means and methods.[5]

Eze has applied that expertise here to explain how the *structure of the transaction* between Ken and Clinton is consistent with Ken using Clinton for the purpose of doing deposit and distribution work while at the same time keeping the scammers' fingerprints off the transaction. That is an entirely valid and well-founded opinion, indeed it is difficult to understand why federal law enforcement officers would disagree that bad actors convince others to move money. DOJ materials published for the public explain the very risk of unknowingly becoming embroiled in a fraudulent transaction.[6]

The court should allow Eze to offer these opinions as it cannot be the case that the only party who can offer testimony on money laundering means and methods in the District of Utah is the U.S. Attorney's Office. The Government's objections as to Mr. Eze's experience and application go to weight and credibility— fact questions for cross examination.[7]

---

[5] Supplement to Expert Disclosure of Uzoma Eze, Dkt. 180
[6] Expert Disclosure of Uzoma Eze, Dkt. 126, p. 5, n. 7.
[7] See, e.g., Federal Practice and Procedure (Wright and Miller) § 6262; *North v. Ford Motor Co.*, 505 F. Supp. 2d 1113, 1120 (D. Utah 2007); *Ngatuvai v. Lifetime Fitness*, 2020 WL 5441442, *6 (D. Utah) (Parrish, J.) (challenges to methodology went to weight rather than admissibility)

## II.     Eze Will Not Testify the Parallel Market is "Legitimate"

The Government misapprehends Eze's opinions and how they will be used at trial. As set forth above, the Government agrees Eze can testify there is a parallel market used by "*people who have earned funds through legitimate means*."[8] That is the relevance of his opinion and Eze will not testify, for example, that money transmitters lacking appropriate state or federal licenses are either legitimate or non-legitimate. His only opinion is that persons who do not intend to transmit fraud proceeds participate in this parallel market; Persons enter the parallel market for purposes other than to transfer fraud proceeds. Given that the Government has conceded Eze is qualified to render this opinion, and given counsel's understanding of the issue and how the questions will be presented on direct, the issue appears moot.

## III.    Eze's Opinion Regarding Uchendu's Use of His Own Accounts is Subsidiary to and Consistent with His Primary Opinion

The Government again misapprehends Eze's opinion regarding the fact Uchendu used his own account information. Eze is not going to testify that the fact Uchendu used his own account means one thing or another with respect to his mental state. The opinion is not that the use of one's own account is the sine qua non of a person who is not involved in fraud. That is too simplistic and mischaracterizes the opinion and its nuances. The disclosed opinion is *"...those involved in fraud in the Nigerian diaspora typically target innocent money mules and convince innocent parties to engage in transactions using their own, legitimate accounts*."[9] Eze will

---

[8] Gov. Supp. Brief, Dkt. 185, p. 5
[9] Disclosure, Dkt. 126, p. 6.

testify that it is common for scammers to trick people into transmitting fraud proceeds, and that the people who are tricked use their own account information rather than false accounts.[10] That opinion falls under the umbrella of appropriate testimony regarding the means and methods of scammers. In *U.S. v. Thomas*[11], for example, the Government presented an expert in money laundering to testify as to "methods of concealing sources of income, including but not limited to transferring currency, structuring, and the use of cash to conceal transactions." The court held this was an appropriate use of expert testimony. In the same way, Eze has opined that scammers use the *method* of convincing others to transmit money on their behalf and indeed, the Government has conceded that is an appropriate opinion. Because Uchendu will not attempt to elicit the simplified opinion set forth above, but instead will testify as to the methods of Nigerian scam operators, Eze may properly testify as to Ken's strategic use of Clinton's personal accounts. To the extent the Government can point to instances where mules have knowingly transferred fraud proceeds using their own accounts, it can explore this topic on cross. But the weight and credibility of expert testimony should be decided by the fact finder not prematurely now.

## CONCLUSION

The court should deny the Government's motion.

Uchendu requests oral argument.

DATED: February 29, 2024

/s/ Sam Meziani
Sam Meziani
*Attorney for Clinton Chukwudi Uchendu*

---

[10] (How could it be otherwise, that persons who are tricked into sending fraud funds use *false* accounts).
[11] 847 F.3d 193, 205 (5th Cir. 2017)